■ WENDY LITWACK, Appellant, v PLAZA REALTY INVESTORS, INC., et al., Respondents. [835 NYS2d 151]—

Orders, Supreme Court, New York County (Marilyn Shafer, J.), entered April 26, 2005 and April 12, 2006, which, in an action for personal injuries allegedly caused by toxic mold in an apartment occupied by plaintiff and owned and managed by defendants, inter alia, granted defendants summary judgment dismissing the complaint, affirmed, without costs.

The motion court correctly held that defendants' knowledge of a brown discoloration spot and surrounding wetness on a wall in the apartment, and of the small leak in the steam pipe behind the wall, did not, as a matter of law, constitute notice of the potential for the mold growth that allegedly caused plaintiff's injuries (*compare Beck v J.J.A. Holding Corp.*, 12 AD3d 238 [2004], *lv denied* 4 NY3d 705 [2005] [issue of fact of constructive notice of potential mold hazard not raised by landlord's knowledge of discoloration of walls and of previous water damage from a flood], *with Daitch v Naman*, 25 AD3d 458 [2006] [issue of fact of constructive notice of potential mold hazard raised by landlord's knowledge of repeated entry of wa-

ter and particulate matter into apartments virtually from onset of exterior facade work]). There being no other evidence tending to show that defendants created or had notice of the alleged mold hazard, the action was properly dismissed. Plaintiff's expert's opinion that defendants improperly removed the sheetrock wall while repairing the steam pipe, causing a dangerous release of mold spores, is conclusory absent a showing of how the wall should have been removed. The expert's opinion that defendants' delay in repairing the steam pipe caused a dangerous growth of mold is conclusory absent a showing of how there could be such growth when the building's steam was off during the entire period of the delay. Concur—Tom, J.P., Andrias, Marlow and Nardelli, JJ.

Saxe, J., dissents in a memorandum as follows: I would reinstate the complaint, which alleges personal injuries caused by toxic mold released into plaintiff's apartment as a result of defendants' failure to take timely action to remediate ongoing water leak problems.

Plaintiff described her problems with unremediated leaks in her apartment. First, there was a longstanding problem with leaking air conditioning/heating units in the apartment, which units would drip constantly while running; the problem was left unaddressed by the landlord except by the suggestion that plaintiff turn off the units. She went on to describe the other water problem, which became apparent in April 1999, when plaintiff noticed a discolored brown spot on the wall in her dining room, which was wet to the touch. She notified defendants, who sent a handyman up to look at it. The handyman removed a five-inch section of the wall, through which opening plaintiff could see a steam pipe. The handyman advised her that the steam pipe could not be fixed until the building heat went back on in the fall, and he covered over the open spot with tape. The discolored wet spot got worse, and plaintiff complained to defendants several times during the summer, but no one came to fix it. Finally, in October 1999, a plumber hired by defendants came to replace the copper pipe and fitting. The following day, another worker spackled and painted over the hole in the wall.

In the fall of 1999 plaintiff began to feel sick. Her symptoms included shortness of breath, chronic diarrhea, rashes on her face and chest, night sweats, flu-like symptoms, memory problems and difficulty concentrating. In October 1999, plaintiff reported these symptoms to her family doctor, who referred her to several other specialists. In July 2001, plaintiff went to the Mayo Clinic, where she saw several other specialists, and was advised to have her apartment environmentally tested. When

plaintiff returned home, she became ill again and hired an environmental specialist to take samples from her apartment. The tests results showed that toxic mold was present in the apartment.

While the motion court initially denied defendants' motion for summary judgment, observing the existence of a triable issue as to whether defendants had notice of persistent water leaks which resulted in a hazardous mold condition, it thereafter granted renewal, and, in reliance on this Court's decision in *Beck v J.J.A. Holding Corp.* (12 AD3d 238 [2004]), granted summary judgment on the ground that there was no evidence of notice of the mold condition.

The motion court's initial approach to this situation was the proper one: the question is not whether defendants had notice of the mold condition itself, but whether defendants had notice of a condition on the premises, namely, ongoing and persistent water leaks, from which it was foreseeable that a hazardous mold condition would result (*see Daitch v Naman*, 25 AD3d 458, 459 [2006]). In *Daitch*, it was asserted that the landlord knew of, and failed to take action to prevent, an ongoing problem with the seepage of water and particulate matter into apartments over an extended period of weeks in the course of work on the building's exterior facade (*id.*). Similarly, here, the problem was not a single incident which the landlord and its agents attempted to take appropriate actions to remediate, but an ongoing problem—demonstrated by the worsening of the wet, discolored spot in the wall—which defendants determined should be ignored from April 1999 until October 1999, despite plaintiff's repeated complaints.

These circumstances are distinguishable from those in *Beck* (*supra*). In *Beck*, there had been a single massive flooding incident in the plaintiff's apartment, caused by a burst pipe in the apartment above; the pipe was repaired, and the landlord had to wait for the walls to dry, and then scrape and paint. While brown spots were said to have appeared on the walls two weeks after the initial paint job, there was no indication that anyone had reason to believe that an unrepaired ongoing leak was continuing to create a dampness problem that could lead to the growth of toxic mold. Therefore, this Court's ruling in *Beck* should not be relied upon for the broad proposition that a landlord may only be held liable for a toxic mold condition if it had notice of the mold itself. Notably, the Court there observed that plaintiff failed to show notice of the mold condition *or* any other act or omission that could have been considered a proximate cause of her respiratory ailments (12 AD3d at 240).

Evidence of defendants' knowledge of ongoing water leak problems, based upon plaintiff's repeated complaints about the growing brown discolored spot and the surrounding wetness on a wall in the apartment, as well as other leak conditions of which she and her parents before her had repeatedly complained, was enough to create a question of fact as to whether defendants had notice of the potential for the mold growth that allegedly caused plaintiff's injuries (*see Daitch, supra*).

Nor is it appropriate to reject out of hand the opinion of plaintiff's expert that defendants improperly removed and failed to properly re-cover the sheetrock wall in the course of examining and repairing the steam pipe, thereby causing a dangerous release of mold spores, and improperly delayed in repairing the steam pipe, also contributing to the dangerous growth of mold. Where there is evidence that brown and orange spots and wetness surround the area of the hole, the expert has a viable basis to conclude that efforts beyond placing tape over the hole are necessary to protect the tenant from the further release of mold into the apartment. The report therefore provided additional support for plaintiff's negligence claim.